UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMUEL SHIPKOVITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action # 07-1053 (RCL) |
| | ) | |
| THE WASHINGTON POST COMPANY, _et al._, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MOTION OF THE DEFENDANTS MARY CURTIUS
AND LOUISE DIMATTEO TO DISMISS OR TRANSFER VENUE</u>

The Defendants Mary Curtius and Louise DiMatteo, by counsel, move this court to dismiss this action or transfer venue to the United States District Court for the Eastern District of Virginia pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Defendants further move this court to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendants file this motion on the following grounds:

1. The Complaint fails to allege facts sufficient to establish personal jurisdiction over these Defendants, and the Court lacks personal jurisdiction over these defendants. This action should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

2. Venue is improper, and this action should be dismissed or transferred to the United States District Court for the Eastern District of Virginia, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

3. The Complaint fails to satisfy the elements of a claim for libel, defamation or invasion of privacy. This Court should dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

WHEREFORE, the Defendants pray that this Court:

1. dismiss this action for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2),

2. transfer this action to the United States District Court for the Eastern District of

   Virginia pursuant to F.R.C.P. 12(b)(3),

3. dismiss this action for failure to state a claim pursuant to F.R.C.P 12(b)(6), and

4. grant any other relief as the Court deems proper.

A supporting memorandum is attached.

                                        MARY CURTIUS
                                        LOUISE DIMATTEO

                                        By Counsel

Stephen A. MacIsaac, County Attorney
D.C. Bar # 362530

/s/ Ara L. Tramblian
_____
Ara L. Tramblian, Deputy County Attorney
D.C. Bar # 468738
2100 Clarendon Boulevard, Suite 403
Arlington, Virginia 22201
(703) 228-3100
Counsel for the Defendants Curtius and DiMatteo

October 1, 2007

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to:

> Jonathan Kravis, Esq.
> William & Connolly, LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005
>
> Samuel Shipkovitz
> 5829 Nicholson Street
> Pittsburgh, PA 15217
>
> Samuel Shipkovitz
> P.O. Box 2961
> Arlington, VA 22202

on October 1, 2007.

/s/ Ara L. Tramblian

_____

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMUEL SHIPKOVITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action # 07-1053 (RCL) |
| | ) | |
| THE WASHINGTON POST COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS MARY CURTIUS AND LOUISE DIMATTEO'S
MOTION TO DISMISS OR TRANSFER VENUE

The Defendants, Mary Curtius and Louise DiMatteo, by counsel, submit this

memorandum in support of their Motion to Dismiss. The Court should dismiss or transfer this

case: 1) because venue is improper in the District of Columbia as to these Defendants, or would

be more convenient in the Eastern District of Virginia; 2) because this Court has no personal

jurisdiction over these Defendants; and 3) because the Complaint fails to state a claim against

them upon which relief can be granted.

**STATEMENT OF FACTS**

The Defendant DiMatteo ("DiMatteo") is an Assistant County Attorney in Arlington,

Virginia, who represented various County employees who were named as defendants by the

Plaintiff ("Shipkovitz") in *Crossan  v. County of Arlington Manager, et al.*, Civil Action # 05-

1219 (U.S.D.C. E.D. Va.) ("*Crossan*"). In *Crossan*, Shipkovitz represented himself pro se and

represented two other plaintiffs as their attorney. That litigation was dismissed on summary

1

judgment in favor of all of the defendants by Memorandum Opinion dated June 22, 2006.  A copy of that Memorandum Opinion is attached as Exhibit 1.[1]

The Defendant Curtius ("Curtius") is a Media Relations Manager for Arlington County, Virginia.  The allegations against DiMatteo and Curtius arise out of the performance of their job duties in Arlington County, Virginia.  At no point in his Complaint does Plaintiff allege that any of the acts or events giving rise to his action against Curtius or DiMatteo took place in the District of Columbia.

This lawsuit arises from two articles published by the Washington Post which refer to the *Crossan* case and its disposition, one published on June 18, 2006, and the other on July 27, 2006. The articles are attached to the Complaint as Exhibits A1 and A3.  The only statement attributed to these defendants appeared in the July 27th article, which quoted Curtius as stating, of the Court's dismissal of *Crossan*, that "[e]very count was found to be without merit."  Complaint, ¶ 20(A).  In Count I of his Complaint, Plaintiff alleges that this statement is defamatory and has caused him personal and professional harm.  *Id.*  Shipkovitz further alleges that DiMatteo prepared a press release for Curtius which contained this statement and thus took part in the defamation of his character.  *Id*.

In Count II of his Complaint, Shipkovitz alleges that DiMatteo committed the tort of invasion of privacy and false light by publishing illegally obtained photographs of Plaintiff's apartment.  Complaint, ¶ 25.  The only specific publication of a photograph alleged by

---

[1] By this litigation, Plaintiff seeks to continue his personal vendetta against DiMatteo, whom the Plaintiff unsuccessfully sued personally in *Crossan*.  In that litigation, after the District Court dismissed the lawsuit against DiMatteo, the Magistrate-Judge, in an April 28, 2006, Order, concluded that Shipkovitz' Motion for Leave to Amend to add additional allegations against DiMatteo was "motivated by bad faith" on Shipkovitz' part, noting that it cast unsubstantiated and irrelevant personal aspersions on DiMatteo's character.  A copy of the Court's Order is attached as Exhibit 2.

Shipkovitz is the one photograph published by the Washington Post, which Plaintiff alleges was a "good summary of the condition" of the apartment. Complaint, ¶ 25; Exh. B to the Complaint, ¶ 7 and Exh. C, ¶ 7.[2]

In Count III of his Complaint, Plaintiff alleges republication of the Washington Post article in other media. While apparently not part of his claim here, Plaintiff notes that DiMatteo impaired his ability to date and attract members of the opposite sex by stating to a female attorney that Plaintiff was "crazy." Complaint, ¶ 34.

## ARGUMENT

### I.   Venue in the District of Columbia is Improper or Would Be More Convenient in the Eastern District of Virginia.[3]

Venue in the District of Columbia is improper as to these Defendants because none of the events that gave rise to Shipkovitz' claim against DiMatteo and Curtius occurred in the District of Columbia. 28 U.S.C. §1391(a) provides that:

> A civil action wherein jurisdiction is found solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(Emphasis added.) Subsection (1) does not apply, as all of the Defendants do not reside in the same state.[4] Subsection (3) does not apply because there is a district in which the action may

---

[2] Upon information and belief, the Washington Post obtained the photograph from the Clerk's Office for the U.S. District Court for the Eastern District of Virginia, as it was an exhibit in the *Crossan* litigation. DiMatteo did not provide it to the Post.

[3] The U.S. Court of Appeals for the District of Columbia held that the question of venue can be properly considered before deciding the question of personal jurisdiction. *Cameron v. Thornburgh*, 983 F.2d 253, 257 n.3 (D.C. Cir. 1993).

otherwise be brought, namely the Eastern District of Virginia. Subsection (2), the only

applicable provision, provides that the action may only be brought in the judicial district in

which a substantial part of the events or omission giving rise to the claim occurred, which in this

case is the Eastern District of Virginia. Thus, if Defendants do not all live in the same state,

venue is only proper in the judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred.

In *Reuber v. United States*, 242 U.S. App. D.C. 370, 750 F.2d 1039 (D.C. Cir. 1984), the

Court held that although a defamatory letter was disseminated in Washington D.C. and caused

harm in Washington D.C., proper venue was in Maryland because that was where the letter was

written and issued, because the Defendants lived in Maryland, and because the pertinent records

were in Maryland. *Reuber v. United States*, 750 F.2d at 1046-47. *See also Lesc v. Martinsburg

Police Dept.*, 2002 WL 215511, 1-2 (D.D.C. 2002) (venue was improper in the District of

Columbia when the majority of the alleged acts of defamation took place in West Virginia); (

*Valdes v. Gordon*, 949 F. Supp. 21, 25-26 (D.D.C. 1996) *aff'd* 1997 WL 404719 (D.C. Cir.

1997) (holding that venue was improper in the District of Columbia when none of the defendants

resided in or were employed in the District of Columbia and a substantial part of the events took

place in Florida.); *Shipkovitz v. Mosbacher*, 1991 U.S. Dist. LEXIS 16152 (D.D.C 1991)

(plaintiff applied for employment at Patent and Trademark Office in Arlington, Virginia and

decisions were made at Arlington office, so venue improper in the District of Columbia).

Just as in the cases listed above, venue is improper in the instant case because none of the

events giving rise to Shipkovitz' claim against Curtius or DiMatteo occurred in the District of

---

[4] The Defendants are the Washington Post Company, a Delaware corporation with offices in
Washington, D.C., WP Company LLC, its subsidiary, Brigid Schulte, a Virginia resident, Mary
Curtius, a Virginia resident, and Louise DiMatteo, a Virginia resident.

Columbia.  Curtius and DiMatteo are both residents of Virginia and employed by Arlington County, Virginia.  See the affidavits of Curtius and DiMatteo, which are attached as Exhibits 3 and 4.  Plaintiff does not allege that either Curtius or DiMatteo uttered the alleged defamatory statements in the District of Columbia.  Indeed, Curtius made her statement in Virginia to a reporter from the Alexandria, Virginia office of the Washington Post.  See Exhibit 4, ¶ 6.

Even if Plaintiff claims that Curtius and DiMatteo's statements in Virginia caused him harm in Washington D.C., the holding in *Reuber* still compels this court to hold that venue is improper because the statements were uttered in Virginia.  Just as the letter in *Reuben* was written in Maryland and disseminated in the District, Curtius and DiMatteo's statements were uttered in Virginia and disseminated in the District.  Just as the Court in *Reuber* held that venue was proper in Maryland because that was where the letter was written and where Defendants resided, this Court should hold that venue is proper in the Eastern District of Virginia because that is where the statements in this case were uttered and where Defendants live.

Alternatively, venue would be more convenient in the Eastern District of Virginia and this action should be transferred there pursuant to 28 U.S.C. § 1404 (a).  All three individual defendants reside in Virginia, the underlying events occurred in Virginia, most if not all of the parties and witnesses who will be called reside in Virginia or are employed by Arlington County, and resolution of this case will almost certainly involve the interpretation of Virginia law.

## II.  <u>This Court Has No Personal Jurisdiction Over These Defendants</u>

Under Federal Rule of Civil Procedure 4(e) and (f), this Court must look to state law in order to determine whether a nonresident party may be subject to federal court jurisdiction.  *Lott v. Burning Tree Club*, 516 F. Supp. 913, 915 (D.D.C. 1980).  To determine whether this Court has personal jurisdiction over Curtius and DiMatteo, it must determine 1) whether the D.C. long-

arm statute permits exercise of jurisdiction over the defendant, and, if so 2) whether that exercise

of jurisdiction comports with constitutional due process requirements.  *Trager v. Wallace Berrie*

*& Co.*, 593 F. Supp. 223, 224 (D.D.C. 1984).

      In his Complaint, Plaintiff alleges that Curtius and DiMatteo committed the tort of

defamation against him.  Since personal jurisdiction over Curtius and DiMatteo must be based on

the D.C. long arm statute and "only a claim for relief arising from acts enumerated in [the D.C.

long-arm statute] may be asserted against [the defendants]", the Court must look to the sections

of the statute concerning tortious injury inflicted by a defendant.  D.C. Code §13-423(b).  D.C.

Code §13-423(a)(3) and (4) provides:

> A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from a person's—

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed, or services rendered, in the District of Columbia.

In both of these subsections, the tortious injury must occur in the District of Columbia in order

for the Court to exercise personal jurisdiction over the Defendants.  Neither subsection applies in

the instant case, since the tortious injury—namely, the alleged defamatory statements uttered by

Curtius and prepared by DiMatteo--occurred entirely in Virginia.

      Shipkovitz bears the burden of pleading and proving sufficient facts upon which to find

personal jurisdiction.  *Pollack v. Meese*, 737 F. Supp. 663, 665-66 (since none of the Defendants

resided in or were incorporated in the District of Columbia, and no actions which formed the

basis for the lawsuit took place in the District of Columbia, the Court lacked personal jurisdiction

over the defendants).  Here, similarly, Shipkovitz has alleged no facts which establish personal

jurisdiction over Curtius and DiMatteo in this Court.  Shipkovitz does not claim that the alleged

defamatory statements made against him by Curtius or DiMatteo occurred in the District of

Columbia, nor does he allege that either Curtius or DiMatteo have some "minimum contacts"

within the District of Columbia pursuant to D.C. Code §13-423(a)(4).  Since Shipkovitz has

failed to allege sufficient facts to establish jurisdiction over the Defendants, the Court should

dismiss this claim against Curtius and DiMatteo for lack of personal jurisdiction.

### III.  Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted

#### A.  Count I (Defamation)

In Count I of his Complaint, Plaintiff alleges that Curtius' statement, "Every count was

found to be without merit" was defamatory.  The alleged statement was made in Virginia by an

Arlington County, Virginia employee to a reporter located at the Washington Post's Alexandria

bureau and thus Virginia law should apply.  *Zandford v. National Association of Securities*

*Dealers*, 19 F. Supp.2d 1 (D.D.C. 1998) (defamatory statements occurred in Virginia so Virginia

law applies).  However, whether Virginia or D.C. law applies, the Complaint fails to state a

claim against these defendants upon which relief can be granted.

To establish a claim of defamation, the plaintiff must at least prove that the defendant

made a false and defamatory statement concerning the plaintiff.  *Chapin v. Greve*, 787 F. Supp.

557, 562 (E.D. Va. 1992); *Klayman v. Segal*, 783 A.2d 607, 613 n.4 (D.C. 2001).  To be

defamatory as a matter of law, a statement must be more than merely offensive or unpleasant and

must make the plaintiff appear "odious, infamous or ridiculous" *Chapin*, *supra*, quoting *McBride*

*v. Merrell Dow and Pharm., Inc.*, 540 F. Supp. 1252, 1254 (D.D.C. 1982).  Truth is an absolute

defense to a claim of defamation.  *Freelander v. Edens Broadcasting, Inc.*, 734 F. Supp. 221, 227

(E.D. Va. 1990), *AIDS Counseling and Testing Centers v. Group W. Television, Inc.*, 903 F.2d

1000, 1004 (4th Cir. 1990); *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004).

A plaintiff seeking compensatory damages for defamation has the burden of proving that the

alleged defamatory statement was false. *Gazette Inc. v. Harris*, 325 S.E.2d 713, 724-25 (Va.

1985).

      The statement at issue, that in granting summary judgment the District Court in *Crossan*

found every count was found to be without merit, is entirely true and therefore not defamatory.

*Crossan* was dismissed with prejudice on all counts.  Plaintiff claims that the Court Order and

Memorandum Opinion dated 2006 never said or even implied that any count was found to be

without merit.  Complaint ¶ 20A.  However, the Memorandum Opinion stated that Plaintiff

requested relief that the Court had "no basis" to grant, failed to present sufficient evidence,

requested damages that were "pure speculation and [had] no evidentiary support" and "failed to

produce any evidence or argument to support" his claims.  Memorandum Opinion at 5-6, 9-10.

Furthermore, a grant of summary judgment is a judgment on the merits of the case.  *See Islamic*

*American Relief Agency v. Gonzales*, 477 F.3d 728, 739 (D.C. Cir 2007) (plaintiff's "claims are

without merit and were properly dismissed or disposed of on summary judgment …"); *Exxon*

*Corporation v. Federal Trade Commission*, 665 F.2d 1274, 1275 (D.C. Cir. 1981) ("The District

Court concluded that these claims were without merit and granted the Commission's cross-

motion for summary judgment'); *Mahoney v. Christian Defense Coalition*, 2000 U.S. Dist.

LEXIS 10348 (D.D.C. 2000) ("plaintiffs' equal protection claim is without merit and summary

judgment for defendants is warranted") *Adkins v. Allstate*, 729 F.2d 974, 976 n. 3 (4th Cir. 1984)

(grant of summary judgment is a judgment on the merits).

      Curtius' statement that Shipkovitz' case was found to be without merit may have been

unflattering to Shipkovitz, but it was not defamatory because it was true. *See Freelander*, *supra,*

734 F. Supp. at 227 (while defendant's characterization of plaintiff as live-in lover was unflattering, it was not defamatory because it was substantially true and, while unpleasant, did not imply that plaintiffs were criminals or persons of moral turpitude); *Benic*, *supra,* 357 F. Supp. 2d at 221-23 (statement that plaintiff was a bad manager was factually true and did not imply that plaintiff had engaged in criminal or unethical conduct).

Similarly here, Shipkovitz' claim at best is that Curtius' statement may have promoted a vague negative impression of Plaintiff, but it does not rise to the level of defamation because it was true and does not imply that Plaintiff had done anything criminal or immoral.

Since Plaintiff cannot prove that the Defendant's statements were false or defamatory, he has failed in his burden of proof and cannot establish the elements of defamation. This Count should therefore be dismissed for failure to state a claim.

**B.  Invasion of Privacy and False Light (Count II)**

In Count II of his Complaint, Plaintiff alleges that DiMatteo invaded his privacy by illegally obtaining and publishing pictures of his apartment, thus casting him in a false light and causing him harm.  There are no allegations against Curtius in Count II.

As noted above, the only specific "publication" alleged is the photograph that appeared in the June 18, 2006 Washington Post article.  It cannot depict Shipkovitz in a false light, as Shipkovitz admits that it is a "good summary of the condition" of the apartment and that "it looked like the back room of a major law firm such as JonesDay or the like."  Complaint, ¶ 25; Exh. B to the Complaint, ¶ 7 and Exh. C, ¶ 7.

Shipkovitz does not identify any other photographs that were published, or where or when they were published and any such claim is not adequately plead.  Freeman v. Bechtel Construction, 87 F. 3d 1029, 1031 (8th Cir. 1996) (complaint must set forth the alleged

defamatory statements and identify the persons to whom they were published, or defendant cannot form responsive pleadings); Marks v. City of Seattle, 2003 U.S. Dist. LEXIS 22426 (W.D. Wa. 2003) (in order to adequately plead defamation claim, must list precise statements, who made them and where).

Given that: 1) Shipkovitz lived in Virginia at the time of the alleged injury and has not since become a D.C. resident; 2) the articles referenced Shipkovitz' Virginia apartment; 3) the actions leading up to Shipkovitz' alleged injury occurred in Virginia; 4) Curtius and DiMatteo are residents of Virginia; and 5) the relationship between Shipkovitz and these Defendants is centered in Virginia, the balance of interest calls for the application of Virginia law. *Foretich v. Glamour*, 741 F. Supp. 247, 250-51 (D.D.C. 1990) (refusing to apply D.C. law to false light claim involving publication in a national magazine because parties were residents of Virginia and not D.C.).

Under Virginia law, this Count must be dismissed for failure to state a claim because Virginia does not recognize invasion of privacy and false light as a cause of action. *Id.*, *Falwell v. Penthouse Int'l, Ltd.,* 521 F. Supp. 1204, 1206 (W.D. Va. 1980) (dismissing false light claim because the courts of Virginia do not recognize such a common law cause of action).

Even if the law of the District of Columbia applies in this case, Plaintiff has not established the elements of invasion of privacy and false light in his Complaint as to Curtius and DiMatteo.  A false light claim requires a showing of: 1) publicity 2) about a false statement, representation or imputation 3) understood to be of and concerning the plaintiff, and 4) which places the plaintiff in a false light that would be highly offensive to a reasonable person. *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999).  Shipkovitz has stated that the photograph published by the Washington Post was an accurate depiction of the apartment, so he

cannot establish that the photographs were a false representation of the condition of his

apartment.  Additionally, he has stated that the photograph looked like a back room at a major

law firm, so he cannot establish that that the photograph placed him in a highly offensive false

light.  *See Klayman v. Segal*, 783 A.2d 607, 618 (D.C. 2001) (holding that defendant's

statements did not place plaintiff in a highly offensive false light because it did not make plaintiff

appear "odious, infamous or ridiculous").

     Additionally, Shipkovitz' claim that the photographs of the apartment were illegally

obtained is barred by the doctrine of collateral estoppel.  The photographs were taken during an

inspection of the apartment, the legality of which was the central issue in *Crossan*.  The District

Court for the Eastern District of Virginia in Alexandria found that "the unrebutted evidence is

that the Inspectors performed a lawful inspection" of the apartment, and granted summary

judgment in favor of the Defendants.  Exhibit 1, p. 7-8.  Since the court has held that the

inspection of the apartment was lawful, Plaintiff is barred from now claiming that the

photographs obtained during the inspection were illegally obtained.  *Elliott v. FDIC*, 305 F.

Supp2d 79, 83-84 (D.D.C 2004).

    C.  **Republication (Count III)**

     Since the defamation count fails for the reasons set forth above, any claim for

republication of the Washington Post article fails for the same reason and should be dismissed as

well.[5]

---

[5] While apparently not part of his claim here, Shipkovitz makes reference to an alleged statement
DiMatteo made to another attorney in which she called Shipkovitz "crazy."  Complaint, ¶ 34.
First Amendment protections apply to statements that cannot "reasonably [be] interpreted as
stating actual facts."  *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 879 (1988).
When used in their popular rather than clinical context, terms such as "crazy" and "nutty" are
considered hyperbole and opinion under the protection of the First Amendment.  *Weyrich v. The
New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001), *Shaw v. Palmer*, 197 S.W.3d 854, 857-

CONCLUSION

The Complaint fails to allege any facts to establish that venue is proper in the District of Columbia or that the Court has personal jurisdiction over these Defendants.  Since the alleged tort took place in Virginia and since Defendants both reside and work in Virginia, venue is proper in Virginia and personal jurisdiction as to these Defendants is proper only in Virginia. The Court should be dismissed or transferred to the District Court for the Eastern District of Virginia.

Further, the Complaint fails to allege any facts that satisfy the elements of libel, defamation or false light.  Therefore, this Court should dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

MARY CURTIUS
LOUISE DIMATTEO

By Counsel

Stephen A. MacIsaac, County Attorney
D.C. Bar # 362530

/s/ Ara L. Tramblian
_____
Ara L. Tramblian, Deputy County Attorney
D.C. Bar # 468738
2100 Clarendon Boulevard, Suite 403
Arlington, Virginia 22201
(703) 228-3100
Counsel for the Defendants Curtius and DiMatteo

October 1, 2007

---

58 (TX App. 2006) (holding that defendant's use of "crazy" was not an assertion of fact, but used in its popular sense, and therefore not defamatory), *Rojas v. Debevoise*, 634 .Y.S.2d 358, 1995 N.Y. Misc. LEXIS 534 (NY 1995) (holding that defendant's statement that plaintiff was "crazy" and "not credible" were nonactionable statements of opinion).

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to:

        Jonathan Kravis, Esq.
        William & Connolly, LLP
        725 Twelfth Street, N.W.
        Washington, D.C. 20005

        Samuel Shipkovitz
        5829 Nicholson Street
        Pittsburgh, PA 15217

        Samuel Shipkovitz
        P.O. Box 2961
        Arlington, VA 22202

on October 1, 2007.

                           /s/ Ara L. Tramblian

                          _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**DEFENDANT'S EXHIBIT**
1

**F I L E D**

JUN 22 2006

U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

STEPHEN C. CROSSAN, <u>et al.</u>, )
)
            Plaintiffs, )
)
v. )          Civil Action No. 05-1219
)
COUNTY OF ARLINGTON )
MANAGER, <u>et al.</u>, )
)
            Defendants. )
)

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendants' Ron Carlee (Carlee), Arlington County Manager; Keith Grierson (Grierson); Dana Wilson (Wilson); Richard Freeman (Freeman); and Sharita Hughes (Hughes) (collectively County Defendants) Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(b), (c). Plaintiffs' Amended Complaint, filed against County Defendants and others, alleges violations of 42 U.S.C. § 1983 (2000) (Count 2); intentional business interference (Count 3); and assault, slander, false imprisonment, and intentional business interference (Count 4). In addition, Plaintiffs seek a permanent injunction against County Defendants (Count 1). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1367.

Plaintiff Samuel Shipkovitz (Shipkovitz) is a former resident of 1200 Crystal Drive, Arlington, VA 22202 (the Condo).

Plaintiff Anthony Sabo (Sabo) had personal property in the Condo under the care of Shipkovitz at the time in question. Defendants Carlee, Grierson, Wilson, Freeman, and Hughes are employees of Arlington County, Virginia. Carlee is the County Manager, Grierson is a Deputy Fire Marshall, Wilson and Freeman are code enforcement officials, and Hughes is a mental health worker.

Stephen Crossan (Crossan) is the owner of the Condo. In 1996 Crossan was found Not Guilty by Reason of Insanity on an arson charge in Virginia state court and was committed to the Northern Virginia Mental Health Institute (Mental Health Institute). Upon his committal, Crossan entered into an agreement with Shipkovitz whereby Shipkovitz would reside in the Condo during Crossan's stay in the Mental Health Institute. Crossan remained in the Mental Health Institute until his conditional release in 2004. Crossan and Shipkovitz both resided in the Condo from 2004 to October 20, 2005.

Pursuant to his release from the Mental Health Institute, Crossan was required to meet daily with representatives from the Arlington County Department of Human Services, one of which was Hughes, Crossan's case manager. Hughes met with Crossan on a weekly basis from 2004 to October 2005, at which time she became concerned that Shipkovitz's massive accumulation of personal property (i.e., paper, boxes, bags, trash, newspapers, etc.) was making the Condo uninhabitable for Crossan. After several

unsuccessful attempts to encourage Shipkovitz to remedy the situation, Hughes contacted Grierson regarding the conditions of the Condo. On October 20, 2005, Hughes arrived at the Condo with Grierson, Wilson, and Freeman (collectively the Inspectors). Grierson explained to Crossan that he and the others were there to inspect the Condo, and requested Crossan's permission to do so. Crossan consented and the Inspectors entered the condo and inspected it for fire code violations.

Grierson determined from his inspection of the Condo that Shipkovitz's massive accumulation of personal property was a fire hazard and that the Condo was uninhabitable. Grierson posted appropriate evacuation and fire hazard notices on the Condo's front door and notified Crossan that he would have to vacate the Condo until the violations could be remedied. Crossan complied, and the Condo's management company changed the locks on the Condo to ensure that no one would enter the Condo until the violations were remedied and the Condo was declared habitable.

On the evening of October 20, 2005, Shipkovitz returned to the Condo to find the locks changed. Shipkovitz timely contacted Grierson, per the notices posted on the front door of the Condo, and requested entry to the Condo to remedy the violations. Grierson, after having obtained permission from Crossan, agreed to let Shipkovitz into the Condo. Grierson met Shipkovitz at the Condo on four to five occasions for a total of seventeen hours so

that Shipkovitz could remove sufficient personal property from the Condo to render it habitable. Shipkovitz failed to remedy any of the violations, and Crossan, the owner of the Condo, instructed Grierson on December 14, 2005, to no longer let Shipkovitz enter the Condo.

In February 2006 Crossan contracted to have the excess personal property removed from the Condo, and on March 3, 2006, Grierson removed the evacuation and fire hazard notices. Shipkovitz claims that the County Defendants illegally searched the Condo, trespassed in his personal quarters, and destroyed his business as a patent attorney by denying him access to materials in the Condo, including Sabo's property. Sabo claims that County Defendants illegally seized his property in the Condo. County Defendants claim that the Inspectors lawfully inspected the Condo pursuant to Crossan's voluntary consent.

Courts must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, courts view the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact

does exist. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.</u>, 475 U.S. 574, 586-87 (1986). The mere existence of some
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no genuine issue of material fact.
<u>Anderson</u>, 477 U.S. at 248. "Rule 56(e) requires the non-moving
party to go beyond the pleadings and by [his] own affidavits, or
by the 'depositions, answers to interrogatories, and admissions
on file,' designate 'specific facts showing that there is a
genuine issue for trial.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 324 (1986).

Count 1 of Plaintiffs' Amended Complaint seeks a permanent
injunction against County Defendants requiring them to grant
Plaintiffs access to the Condo and obtain judicial consent before
conducting similar residential inspections. In addition,
Plaintiff requests that the Court order the Arlington County
Department of Human Services to instruct its employees to
maintain the confidences of their clients. Crossan, having
remedied the Condo's violations, is currently in possession of
the Condo, therefore, if Plaintiffs desire access to the Condo or
anything therein they must obtain such access from Crossan, the
owner of the Condo. The County Defendants have no ability to
grant Plaintiffs access to Crossan's private residence. Likewise,
there is no basis for the Court to order Arlington County to

obtain judicial consent before inspecting residences for fire hazards when the owner of the residence has consented to the inspection. Crossan had full authority to allow the Inspectors to inspect the Condo, United States v. Matlock, 415 U.S. 164, 169-71 (1974), and there is no evidence that they engaged in any misconduct or violated any law while performing said inspection.

Finally, there is no basis for the Court to order the Arlington County Department of Human Services to instruct its employees to maintain their clients confidences. While Shipkovitz contends that Hughes promised him that she would not disclose anything she saw in the Condo regarding him or his possessions, there is no evidence to support such a claim or a relationship between Hughes and Shipkovitz that would create a right of privacy. Hughes was obligated to ensure through her weekly examinations of Crossan that he was succeeding outside of the Mental Health Institute, and she had every right to report to Grierson the obvious and excessive fire hazard that Shipkovitz had created in the Condo through his massive accumulation of personal property. Therefore, summary judgment should be granted to County Defendants on Count 1.

Count 2 of Plaintiffs' Amended Complaint alleges that County Defendants and Defendants Philip Almeida (Almeida), Robert Speck (Speck), and Chas. E. Smith Management, Inc. (CESMI), violated 42 U.S.C. § 1983 by conducting an unreasonable search of the Condo,

illegally seizing their property therein, and illegally denying them access to the Condo. As an initial matter, Plaintiffs may not pursue a claim against Carlee under § 1983 because "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978). There is no evidence that Carlee had any knowledge of or participated in the inspection of the Condo on October 20, 2005. Likewise, there is no evidence that the Inspectors were acting pursuant to an official county policy that caused a constitutional tort. Id. The unrebutted evidence is that the Inspectors performed a lawful inspection of the Condo based on Hughes prior conversation(s) with Grierson and Crossan's consent to the inspection. Therefore, Plaintiffs may not pursue a claim against Carlee based upon the inspection of the Condo performed by the Inspectors.

Similarly, Plaintiffs may not pursue a claim against the Inspectors for their inspection of the Condo. First, Crossan, the owner of the Condo, explicitly authorized the inspection of the Condo. Second, the Inspectors are entitled to qualified immunity as "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Finally, all claims against Speck were dismissed pursuant to the Court's Order of April 27, 2006, and the Court finds that all claims

against Defendants Almeida and CESMI should be dismissed at this time due to Plaintiffs' failure to prosecute those claims. Therefore, summary judgment should be granted to County Defendants on Count 2.

Count 3 of Plaintiffs' Amended Complaint alleges intentional business interference against County Defendants. Specifically, Plaintiffs allege that County Defendants refused to grant them temporary or permanent access to the Condo, thus destroying Shipkovitz's business and Sabo's ability to patent his property in the Condo. County Defendants did grant Plaintiffs access to the Condo to remedy the violations, which Shipkovitz failed to do, until Crossan ordered Grierson to stop granting Plaintiffs access to the Condo. Furthermore, there is no evidence of "intentional interference inducing or causing a breach or termination of ... [a business] relationship or expectancy" by County Defendants. Chaves v. Johnson, 230 Va. 112, 120 (1985). Therefore, summary judgment should be granted to County Defendants on Count 3.

Count 4 of Plaintiffs' Amended Complaint alleges assault, slander, false imprisonment, and intentional business interference against Defendants Almeida, Speck, CESMI, Black Ice Security Services, Inc. (Black Ice), and John Doe 1. All claims against Almeida, Speck, and CESMI should be dismissed for the reasons stated in the Court's discussion of Count 2. All claims

8

against John Doe 1 should be dismissed because Plaintiffs have failed to prosecute their claims against John Doe 1.

Plaintiffs filed the Amended Complaint on January 20, 2006, and served process on Black Ice on February 10, 2006. The only action Plaintiffs have taken against Black Ice since serving process was to file an Application for Default against Black Ice. Plaintiffs ask the Court to enter default judgment against Black Ice in the amount of $170,000. Specifically, Plaintiffs seek $2,000 in dental costs and $168,000 in lost future earnings.

The two components of Plaintiffs' requested damages against Black Ice are pure speculation and have no evidentiary support. Plaintiffs request $2,000 in dental costs that Shipkovitz will allegedly incur to repair six cracked teeth that he suffered because Black Ice refused to let him into the Condo on October 20, 2005, to retrieve his custom orthodontic night guard. Plaintiffs, however, cannot obtain damages for these alleged dental costs for three reasons. First, Shipkovitz failed to mitigate these damages by taking appropriate remedial action, such as obtaining a replacement night guard. Haywood v. Massie, 188 Va. 176, 182 (1948). Second, the unrebutted evidence in this case is that Plaintiffs did in fact have access to the Condo and the night guard on at least four occasions from October 20, 2005, to December 14, 2005. Finally, Black Ice was under no duty, as Plaintiffs contend, to let Shipkovitz into the Condo when it had

been placed under a vacate order by Grierson.

Plaintiffs also request $168,000 in lost future earnings caused by Black Ice's refusal to let Shipkovitz into the Condo on October 20, 2005, to retrieve his résumé, federal work application, and work product materials. Plaintiffs, however, cannot obtain damages for these alleged lost future earnings for two reasons. First, Plaintiffs have failed to introduce any evidence, other than Shipkovitz's affidavit, that Shipkovitz is permanently disabled and unable to continue working as a patent attorney. See Norfolk Ry. & Light Co. v. Spratley, 103 Va. 379, 386-87 (1905) (stating that "[t]here is, ... no evidence other than that of experts by which courts and juries can determine whether a disease or an injury has or can be permanently cured, or what its effect will be upon the health and capability of the injured person in the future"). Second, even if the Court were to believe Plaintiffs' unsupported claim that Shipkovitz is peramently disabled, Plaintiffs have failed to produce any evidence or argument to support a finding that Black Ice caused such disability. Therefore, all claims by Plaintiffs against Black Ice should be dismissed for failure to prosecute.

An appropriate Order shall issue.

_Claude M. Hilton_
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
June 22 , 2006

10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

APR 2 8 2006
*cs*

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

STEPHEN C. CROSSAN, *et al.*,       )
                                    )
            Plaintiffs,             )
                                    )
v.                                  )      Civil Action No. 1:05cv1219 (CMH/LO)
                                    )
COUNTY OF ARLINGTON, MANAGER,       )
*et al.*,                           )
                                    )
            Defendants.             )

DEFENDANT'S
EXHIBIT
*2*

OFFICE OF THE COUNTY ATTORNEY
ARLINGTON, VIRGINIA
RECEIVED

MAY   1 2006

BY_____
TIME_____

**ORDER**

For the reasons stated from the bench and for good cause shown, it is

ORDERED that Plaintiff Shipkovitz's Motion to Extend Period for Discovery (Dkt. 95) is DENIED.  Plaintiff has already requested, and been granted, an extension of the discovery period.  He has taken four depositions in this case, sought and received Court intervention in numerous discovery disputes, and received all of the discovery to which he is entitled under the Court's March 31, 2006 order.  The Court finds that no further extension of the discovery period is warranted in this case.  It is further

ORDERED that Plaintiff Shipkovitz's Motion for Leave to Amend Complaint (Dkt. 94) is DENIED.  On January 6, 2006, after dismissing two defendants from this case, the Court gave the original Plaintiffs leave to amend their Complaint within 14 days, and Plaintiffs filed an Amended Complaint on the fourteenth day, January 20, 2006.  Although Plaintiff Shipkovitz argues that that document was intended only as a draft, the Court entered it as an Amended Complaint, and it has been operative since that time.  Defendant Louise DiMatteo was named in the Amended

Complaint, but was not served with a copy of the summons and Amended Complaint until March 27, 2006, a mere one month before the close of discovery. The Motion for Leave to Amend Complaint that is before the Court today seeks to add allegations that Defendant DiMatteo acted outside the scope of her authority as Assistant County Attorney and that Defendant DiMatteo's actions were malicious. The Court finds this proposed amendment to run afoul of virtually every factor relevant to the Court's consideration of amendments sought out of time: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Plaintiff Shipkovitz has not alleged that he is requesting leave to amend in response to newly-discovered evidence, but is filing this motion three months after the Court entered the Amended Complaint and one week before the close of discovery. This undue delay would be substantially prejudicial to Defendant DiMatteo, who would have no time in which to conduct meaningful discovery as to the additional allegations. Moreover, the Court finds that the Motion for Leave to Amend is motivated by bad faith on Plaintiff's part, as it, like many of Plaintiff's pleadings before it, casts unsubstantiated and irrelevant personal aspersions on Defendant DiMatteo's character. Finally, the Court finds that such amendment would be futile. Plaintiff has produced no competent evidence that Defendant DiMatteo acted outside her authority or in any capacity other than her role as Assistant County Attorney and the Court therefore is not persuaded that this amendment would enable the Amended Complaint to weather a motion to dismiss on the basis of qualified immunity. Finally, it is

ORDERED that Plaintiffs Shipkovitz's Emergency Motion to Enforce Subpoena Duces Tecum for Documents Only Served on Stanley T. Naudus Corporation (Dkt. 106) is DENIED,

and the subpoena duces tecum issued for documents in the possession of the Stanley T. Naudus Corporation is hereby quashed. The Court finds that this subpoena seeks documents that are entirely outside the universe of issues relevant to this case. The loss or theft of Plaintiff Shipkovitz's personal belongings may give rise to a separate tort claim, but that claim is not before the Court. The Court cannot allow Plaintiff to use this case as a platform for discovery in his next case.

ENTERED this ___ day of April, 2006.

Liam O'Grady
United States Magistrate Judge

Alexandria, Virginia

DEFENDANT'S
EXHIBIT
_3_

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL SHIPKOVITZ,         ) | |
|        ) | |
|      Plaintiff,     ) | |
|        ) | |
| v.        ) | Civil Action # 07-1053 (RCL) |
|        ) | |
| THE WASHINGTON POST COMPANY, *et al.*, ) | |
|        ) | |
|      Defendants.    ) | |

AFFIDAVIT OF LOUISE DIMATTEO

Louise DiMatteo appeared before the undersigned authority and affirmed the following facts under oath:

1.    I am Louise DiMatteo and have been employed as an Assistant County Attorney with the Arlington County Attorney's Office since 2004.

2.    I am a resident of the Commonwealth of Virginia and have been so since 1991.

3.    I do not regularly do or solicit business in the District of Columbia.

4.    I do not engage in any persistent course of conduct in the District of Columbia.

5.    I do not derive substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

_____
Louise DiMatteo

STATE OF VIRGINIA; COUNTY OF ARLINGTON; to-wit:

Subscribed and sworn to before me on September 27, 2007.

My commission expires:            _____
                                     Notary Public

DEFENDANT'S
EXHIBIT
4

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

SAMUEL SHIPKOVITZ,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Civil Action # 07-1053 (RCL)
                                      )
THE WASHINGTON POST COMPANY, _et al._, )
                                      )
        Defendants.                   )

<u>AFFIDAVIT OF MARY CURTIUS</u>

   Mary Curtius appeared before the undersigned authority and affirmed the

following facts under oath:

   1. I am Mary Curtius and have been employed as a Media Relations Manager with

Arlington County since April 2006.

   2. I am a resident of the Commonwealth of Virginia and have been since August 2002.

   3. I do not regularly do or solicit business in the District of Columbia.

   4. I do not engage in any persistent course of conduct in the District of Columbia.

   5. I do not derive substantial revenue from goods used or consumed, or services

rendered, in the District of Columbia.

   6. Any conversation I had with Brigid Schulte (a Washington Post reporter in their

Alexandria office) regarding the _Crossan_ case would have taken place in Virginia.

                                                          Mary H. Curtius
                                                          Mary Curtius

STATE OF VIRGINIA; COUNTY OF ARLINGTON; to-wit:

   Subscribed and sworn to before me on September 27, 2007.

My commission expires:

                                                          Notary Public

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

SAMUEL SHIPKOVITZ,                          )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )          Civil Action # 07-1053 (RCL)
                                            )
THE WASHINGTON POST COMPANY, _et al._,      )
                                            )
            Defendants.                     )

<u>ORDER</u>

This matter was before the Court on the Motion to Dismiss or Transfer Venue

filed by the Defendants Curtius and DiMatteo; and

It appearing to the court that the motion should be granted; therefore

It is hereby ORDERED that the motion is granted and the Complaint against the

Defendants Curtius and DiMatteo is dismissed with prejudice/transferred to the U.S. District

Court for the Eastern District of Virginia.

The Clerk is directed to send copies of this Order to all counsel of record.

Entered _____, 2007.

_____
Royce C. Lamberth, U.S. District Judge

Copies to:

Ara L. Tramblian, Deputy County Attorney
2100 Clarendon Boulevard, Suite 403
Arlington, Virginia  22201


Jonathan Kravis, Esq.
William & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Samuel Shipkovitz
P.O. Box 2961
Arlington, VA 22202