**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SAMUEL SHIPKOVITZ,**

**Plaintiff,**

**v.**

**THE WASHINGTON POST COMPANY, *et al.*,**

**Defendants.**

**Civil Action No. 07-1053 (RCL)**

**MEMORANDUM OPINION**

Now before the Court comes four pending motions in this case: (1) defendants Mary Curtius and Louise DiMatteo's (collectively, "Arlington Defendants") motion [3] to dismiss or transfer venue; (2) plaintiff's motion [27] for reconsideration of the Court's Order [26] dated January 9, 2008 and "for leave to supplement and second supplement to [plaintiff's response to Arlington Defendants' motion to dismiss or transfer]," and for extension of time to respond to Arlington Defendants' motion"; (3) plaintiff's unopposed motion [32] for leave to file surreply; and, (4) Washington Post Company, WP Company, LLC, and Brigid Schulte's (collectively, "WP Defendants") motion [15] for summary judgment.

Upon full consideration of these motions, the opposition and reply briefs, the entire record herein, and applicable law, the Court finds, for the reasons set forth below, that plaintiff's complaint as to Arlington Defendants will be dismissed without prejudice, and that Arlington Defendants' motion [3] will be DENIED as moot. Further, plaintiff's motion [27] for reconsideration and other relief will be DENIED and his motion [32] for leave to file surreply will be GRANTED. WP Defendants' motion [15] for summary judgement will be GRANTED.

## I. BACKGROUND

Plaintiff Samuel Shipkovitz was once a resident of a condominium located at 1200 Crystal Drive in Arlington, Virginia. *See Crossan v. County of Arlington Manager*, No. 05-cv-1219, 2006 WL 2088743, at *1 (E.D. Va. June 22, 2006). The owner of the condo, Stephen Crossan, agreed that plaintiff could reside at the residence while Mr. Crossan was committed to the Northern Virginia Mental Health Institute. *Id.* Upon Mr. Crossan's 2004 conditional release, plaintiff and Mr. Crossan co-resided at the condo until October 20, 2005. *Id.* On that date, Arlington County Deputy Fire Marshal Keith Grierson and other county officials arrived at the condo, were given permission to inspect the premises, determined that plaintiff's "massive accumulation of personal property" was a fire hazard, and declared the condo uninhabitable.[1] *Id.* Deputy Fire Marshal Grierson posted appropriate evacuation and fire hazard notices and notified Mr. Crossan that he would have to vacate the condo until the violations were remedied. *Id.* When plaintiff became aware of these events, county officials permitted him several opportunities to remove personal property in an effort to render the condo habitable. *Id.* at *2. After plaintiff repeatedly failed to remove his property, Mr. Crossan instructed that plaintiff would no longer be permitted to enter the premises. *Id.* In February 2006, Mr. Crossan contracted to have plaintiff's excess property removed from the condo, thereby making the premises habitable. *Id.*

At some point, plaintiff contacted the Washington Post to see if it would be interested in publishing an article about his legal efforts to challenge the county's actions. (*See* Mot. Summ.

[1] Mr. Crossan's case manager had notified Arlington County officials of her concern that a massive accumulation of "paper, boxes, bags, trash, newspapers, etc." was making the condo uninhabitable. *Id.*

J. at 3; Opp. at 1.) On June 18, 2006 and July 27, 2006, the Washington Post published articles about Mr. Shipkovitz's accumulation of property, the actions of what is known as the Arlington hoarding task force, and the dismissal of Eastern District of Virginia litigation challenging the task force's actions; defendant reporter Brigid Schulte wrote both articles. (*See Fighting to Remain Engulfed in Junk: As Task Forces Move in, Hoarders Strike Back in Court*, Ex. A to Compl.; *Hoarder's Eviction Didn't Violate Rights, Judge Says*, Ex. D to Compl.) Based on publication of these articles, plaintiff alleges that WP Defendants are liable for libel and invasion of privacy. (*See* Compl. ¶¶ 17–28.) Specifically, plaintiff objects to the first article's purportedly false statements such as: "he works sporadically and has had long periods of unemployment"; "[h]e admits that his place was a mess"; "he slept on top of his stuff on the floor"; "there were boxes in the bathtub"; "there was "rubbish, debris, paper, . . . [and] bags . . ." crammed "from floor to ceiling"; "the kitchen was unusable"; researchers are studying hoarding's "association with mental illness, brain dysfunction, and obsessive-compulsive disorders"; and, "Shipkovitz's . . . court filings are typed single-spaced or handwritten on 100 percent recycled paper." (*Id.* ¶¶ 17, 25.) The second article contained allegedly libelous statements such as: "[e]very count [of plaintiff's Eastern District of Virginia lawsuit] was found to be without merit," and there was a "massive amount of junk in the condo—. . . bags, trash . . . ." (*Id.* ¶ 20.) Plaintiff also considers the label "hoarder" to be libelous. (*Id.* ¶ 19.) Specific to plaintiff's invasion of privacy claim, he asserts that the Washington Post published an "illegally taken photograph." (*Id.* ¶ 27.)

WP Defendants contend that plaintiff's suit is not meritorious because the articles were true and also fell within the common law privilege to report on official acts and proceedings

because the articles were based on actions of Arlington County officials and court documents.

## II. ANALYSIS

### A. Arlington Defendants' Motion to Dismiss or Transfer Venue

While plaintiff did not properly file a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), plaintiff's response [28] to Arlington Defendants'[2] motion [3] to dismiss or transfer venue makes clear that he intended to file such a notice; Arlington Defendants' reply brief [30] indicates that they do not oppose dismissal without prejudice. Accordingly, the Court will order dismissal of Arlington Defendants from this suit and deny their motion to dismiss or transfer venue as moot.

### B. Plaintiff's Motion for Reconsideration and for Other Relief

In consideration of plaintiff's motion [27] for reconsideration, plaintiff presents nothing new that causes the Court to question its prior ruling. And, to the extent that plaintiff's motion requests relief against Arlington Defendants, the motion is moot given that they will be dismissed from this case.

### C. WP Defendants' Motion for Summary Judgment

#### 1. Applicable Law

##### i. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact

[2] Defendant Curtius is the Media Director for Arlington County, who issued a press release on June 22, 2006 regarding Mr. Shipkovitz's Virginia litigation. (*See* Compl. ¶ 4.) Defendant DiMatteo is an Assistant Arlington County Attorney. (*See id.* ¶ 5.)

and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence, when viewed in a light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. *Id.* at 252. The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "[A]t the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts—these are jury functions, not those of a judge ruling on a motion for summary judgment." *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005); *see also Agosto v. INS*, 436 U.S. 748, 756 (1978) (noting that a district court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented").

"[W]here, as here, an action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'"[3] *Pollinger v. United States*, 539 F. Supp. 2d 242, 249 (D.D.C. 2008) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

---

[3] In this case, *pro se* plaintiff is an attorney. Nonetheless, the Court finds it appropriate to hold his filings to a less stringent standard.

**ii. District of Columbia Libel Standard**

> To make out a successful defamation action under District of Columbia law, a plaintiff must show
>
> > (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)). Truth is a complete defense to defamation. *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994) (citing *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988)). And, "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (citation omitted); *see Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) (stating that "to be actionable, the story must be materially false").

When faced with a libel suit, defendants like WP Defendants are entitled to a "common law privilege to publish fair and accurate reports of governmental proceedings." *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990). Such reports must be "published for the purpose of informing the public as to a matter of public concern." *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 88 (D.C. 1980). This "fair report privilege" is an exception to the general rule that a republisher of a defamation is held to have adopted the defamation as its own. *See White*, 909 F.2d at 527 (citing *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985)). Courts have found that the privilege extends to reports of court

proceedings as well as to actions taken by any government officer or agency. *See id.* (citing *Phillips*, 424 A.2d at 88).

**iii. District of Columbia Invasion of Privacy Standard**

Plaintiff asserts an invasion of privacy cause of action against WP Defendants. A false light invasion of privacy claim requires: "1) publicity 2) about a false statement, representation or imputation 3) understood to be of and concerning the plaintiff, and 4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 652E (1977)). These elements are "similar to those of a [defamation] claim," and where a plaintiff brings defamation and false light claims based on the same underlying allegations, "the claims will be analyzed in the same manner."[4] *See Blodgett v. Univ. Club*, 930 A.2d 210, 222–23 (D.C. 2007) (citation omitted).

**2. WP Defendants Entitled to Summary Judgment on Libel Claim**

As discussed below, the Court, taking special care to construe *pro se* plaintiff's filings liberally, finds that the evidence in this case, when viewed in a light most favorable to him, is such that no reasonable juror could find in plaintiff's favor on his libel claim against WP Defendants.

**i. Truth as a Defense**

The Court's analysis begins at the first element of defamation: a false and defamatory

---

[4] "Whereas an action for defamation redresses damage to one's reputation, the tort of false light is intended to remedy mental distress from having been exposed to public view." *Lane v. Random House, Inc.*, 985 F. Supp. 141, 148 (D.D.C. 1995) (Lamberth, J.).

statement concerning the plaintiff. The Arlington County investigators' photographs conclusively establish that the Washington Post's statements regarding the premises' condition are substantially true.[5] (*See* Photographs, Ex. 4 to Mot. Summ. J.) If the stories contain any falsities related to the condo, they are merely minor inaccuracies that no reasonable fact-finder would consider material.

To the extent that the articles suggest plaintiff was a hoarder, that statement is not materially false. "Hoarding" involves "acquiring and keeping objects that appear to have limited if any value, and they begin to take over your living space."[6] (*See* Richard Trubo, *When People Hoard*, Health & Balance (WebMD 2003), Ex. 14 to Mot. Summ. J.) The photos of the condo confirm that any reference to plaintiff as a "hoarder" was not materially false under the definition cited by WP Defendants or under any other common understanding of the term.

As for plaintiff's argument alleging defamation related to the report that "[e]very count [of plaintiff's Eastern District of Virginia lawsuit] was found to be without merit," the Court

---

[5] WP Defendants' exhibit 4 contains thirty-eight photographs taken by Arlington County investigators. (*See* Freeman Aff., Ex. 7 to Mot. Summ. J. (attesting to accuracy of photographs)). The photos demonstrate that: the kitchen was unusable (Ex. 4A); boxes were in the bathtub (Ex. 4BB); what appears to be the sleeping area is covered with bags, newspapers, soda cans, and other miscellaneous objects (Exs. 4EE & 4II); and, boxes, bags, and other items are piled to the ceiling in certain areas (Exs. 4FF & GG). Viewing exhibit 4 as a whole, it is clear that the apartment was filled with "massive amounts of junk."

The Court notes that plaintiff attempts to draw a distinction between a sleeping area covered with piles of stuff and an area *surrounding* a sleeping area covered with stuff. (*See* Opp. at 8.) Such a distinction is insignificant.

[6] Psychological literature confirms this definition: "Hoarding has been defined as the 'acquisition of and failure to discard possessions that appear to be useless or of limited value.'" (Randy O. Frost & Tamara L. Hartl, *A Cognitive-Behavioral Model of Compulsive Hoarding*, 34 BEHAV. RES. THER. 341, 341 (1996), Ex. 15 to Mot. Summ. J.)

finds that this statement is also true. The Eastern District of Virginia court disposed of each of plaintiff's allegations against Arlington County defendants by granting summary judgment in their favor.[7] *See Crossan v. County of Arlington Manager*, No. 05-cv-1219, 2006 WL 2088743, at *2–3 (E.D. Va. June 22, 2006). Reporting such a court decision as finding the claims without merit is appropriate.

Plaintiff also claims that he never admitted "that his place was a mess" as the Washington Post reported. (*See* Opp. at 9.) However, plaintiff's own filings betray his contention. In those filings, he admits that his "apartment look[ed] like the back office of Jones Day" law firm, (Opp. at 45), had five printers, piles of books, and piles of newspapers, (see *id.*), and was not neat, (*see id.* at 9). Plaintiff appears to believe that these qualities are unrelated to mess. (*See id.*) This Court finds that no reasonable jury would concur with that statement, and that it is not materially false to say that plaintiff admitted his place was a mess.[8]

Further, plaintiff objects to the report that he "he works sporadically and has had long periods of unemployment." However, one of plaintiff's own court filings confirms that he has "been out of business since October 20, 2005." (*See* Am. Compl. ¶ 66, *Crossan v. County of Arlington Manager*, 05-cv-1219 (E.D. Va. Mar. 10, 2006), Ex. 9 to Mot. Summ. J.) This admission is consistent with Ms. Schulte's recollection indicating that plaintiff represented he

---

[7] The court dismissed counts against other named defendants for plaintiff's failure to prosecute those claims. *See Crossan*, 2006 WL 2088743, at *3–4.

[8] The Court notes that the Washington Post claims to have contacted plaintiff repeatedly prior to running its first article. (*See* Schulte Decl. ¶ 12, Ex. 3 to Mot. Summ. J.) According to Ms. Schulte, plaintiff never returned these calls, (*see id.*), which would have presumably provided a pre-publication opprotunity to correct any statements that he perceived as misquotes.

did not "have a job right now" and that his age was "like the kiss of death for getting a job." (*See* Schulte Decl. ¶ 5–6, Ex. 3 to Mot. Summ. J.) Thus, the article's statement was substantially accurate.[9]

**ii. Articles Do Not Imply Plaintiff Is Mentally Ill**

Plaintiff makes much of his allegation that WP Defendants imply that he is mentally ill. (*See* Opp. at 10, 19.) However, the Washington Post merely stated that "[t]hough researchers have just begun to study [hoarding] and its association with mental illness, brain dysfunction and obsessive-compulsive disorders, they estimate that 1.4 million Americans—and that might be a gross underestimation—cannot stop themselves." (*See* Ex. A to Compl.) This does not imply that plaintiff is mentally ill. Rather, the article suggests that the link between mental illness and hoarding is unclear; in any event, the article makes no connection between plaintiff and mental illness. Such a statement is insufficient to constitute libel. *See White v. Fraternal Order of the Police*, 909 F.2d 512, 519 (D.C. Cir. 1990) (instructing that courts "must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of

---

[9] Plaintiff makes other objections, which may be similarly disposed of. First, he takes issue with a statement that Mr. Crossan's family hired a lawyer to facilitate the removal of plaintiff's possessions from the condo. (*See* Compl. ¶ 17.) Plaintiff contends that Mr. Crossan's *brother*, not his *family*, hired the lawyer. (*See id.*) Even if true, such an insignificant inaccuracy does not rise to the level of libel. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).

Additionally, plaintiff challenges the statement that his Virginia court filings were "typed single-spaced or handwritten on 100 percent recycled paper." (*See* Compl. ¶ 17.) Plaintiff contends that only one of his filings was handwritten, that he only uses "bleached [non-recycled] paper," and that the Washington Post is implying that he is a "green extremist—i.e., a green nut." (*See* Opp. at 11.) Even assuming that plaintiff only used bleached paper, no reasonable jury would see such an extreme implication. The statement is not defamatory and would at most be an insignificant inaccuracy.

sustaining such meaning").

In light of the above discussion, the articles in question are not libelous, and summary judgment in favor of WP Defendants on plaintiff's libel claim is proper.[10]

**iii. Fair Report Privilege**

The Court could have alternatively granted judgment based on the "fair report privilege." The Washington Post's articles were based on both official actions of Arlington County authorities and judicial proceedings in the Eastern District of Virginia. Much of the articles' description of the condo's condition was taken directly from court pleadings. (*See e.g.*, Opp. to Mot. for TRO & Prelim. Inj. at 3, *Crossan v. County of Arlington Manager*, 05-cv-1219 (E.D. Va. Mar. 10, 2006), Ex. 10 to Mot. Summ. J.) And, the descriptions of the hoarding task force's actions and court documents were such that the "average reader would be likely to understand the communication to be a report on—or the summary of—an official document or proceeding." *See White*, 909 F.2d at 527 (citation omitted). Thus, the descriptions are entitled to the fair report privilege and summary judgment on this basis would be proper. *See id.*

**3. WP Defendants Entitled to Summary Judgment on Invasion of Privacy Claim**

Plaintiff's false light invasion of privacy claim must fail for the same reasons that his libel claim fails. As discussed above, the articles are essentially true and no reasonable jury could find them libelous. This analysis applies equally to plaintiff's invasion of privacy claim.

---

[10] Plaintiff's complaint includes a separate Count titled "Republication by Third Parties." (*See* Compl. ¶¶ 30–35.) Because the Court has found that the articles are, as a matter of law, not defamatory, any cause of action based on republication must be rejected.

*See Blodgett v. Univ. Club*, 930 A.2d 210, 223 (D.C. 2007) (stating that when plaintiffs bring both defamation and false light invasion of privacy claims based on the same conduct, courts analyze both claims in the same manner). Further, plaintiff admits that the photo that was allegedly taken and published illegally was actually obtained lawfully: plaintiff e-mailed it to Ms. Schulte. (*See* Opp. at 6.) For these reasons, plaintiff's invasion of privacy claim fails as a matter of law.

## III. CONCLUSION

For the reasons set forth in this Opinion, defendants Mary Curtius and Louise DiMatteo will be dismissed from this case without prejudice and their motion [3] to dismiss or transfer venue will be DENIED as moot; plaintiff's motion [27] for reconsideration and other relief will be DENIED; his unopposed motion [32] for leave to file surreply will be GRANTED; and, WP Defendants' motion [15] for summary judgment will be GRANTED.[11]

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth, on August 19, 2008.

[11] Plaintiff asserts that the Court should order discovery pursuant to Federal Rule of Civil Procedure 56(f) before it rules on the pending summary judgment motion. (*See* Opp. at 28.) Yet, plaintiff fails to offer any indication of what purpose discovery could possibly serve in this case and the Court is unable to see one. Thus, the Court rejects plaintiff's request.